statute as an actual dissolution until a month after this sale was made, and persons dealing with the firm had a right to rely upon the continuance of the partnership until the dissolution, as the notice expressed it, took "effect according to law." (*Beers* agt. *Reynolds,* 12 *Barb.,* 291; 1 *Com.,* 100.) The amount of the notes and the interest having been admitted by the counsel for Marks and Bramhall, there was no occasion for an assessment of the amount due.

The judgment should be affirmed.

———◆◆———

## SUPREME COURT.

ALFRED FIELD and others agt. ISAAC L. HUNT and others.

JOHN ASKHAM and others agt. THE SAME.

*Each member of a copartnership* has a right to dispose of his interest in the partnership property, in good faith, and for a valid consideration, unless some creditor has acquired a *lien* thereon. And the right of the creditor is subordinate to this power of the partner to dispose of the property *until it is subjected to the creditor's lien.*

Where one partner thus transfers his interest in the partnership assets to his copartner, the property so transferred cannot be reached by execution on a judgment recovered against the firm, where the *latter has not been personally served with process.*

The remedy at law has not been exhausted as against the partner not served with process, and of course a *creditor's suit* against the defendants cannot be maintained. (*This affirms the decision S. C. at special term,* 22 *How.,* 329.)

It is *held* in the first judicial district that it is not necessary to wait sixty days—the return day of an execution—before commencing equitable proceedings on a judgment at law, if the execution has actually been returned before the sixty days have expired. (*There are adverse decisions in other districts.*)

*New York General Term, February,* 1863.

INGRAHAM, LEONARD and BARNARD, *Justices.*

APPEAL by plaintiffs in each action from a judgment of the special term. The facts of this case will be found in full in the report of the case at special term. (22 *How. Pr. R.,* 329.)

GEORGE N. TITUS, *for plaintiffs.*
WM. CURTIS NOYES and CHAPMAN & HITCHCOCK, *for
defendant Chapman.*

LEONARD, J.   Each member of a copartnership may
require the assets of the firm to be applied to the satis-
faction of the partnership debts.   Each member may also
dispose of his interest in the partnership property in good
faith, and for a valid consideration, unless some creditor
has acquired a lien thereon.   The right of the creditor is
subordinate to this power of the partner to make a *bona
fide* disposition of the property until it is subjected to
the creditor's lien.   (3 *Kent's Com.*, 65, *and note; Story's
Eq. J.*, §§ 675, 1243, 1253 ; *Story on Partnerships*, §§ 373,
402 ; *Gow on Partnerships*, 275 ; *Ex parte Rowlandson*, 1
*Rose R.*, 416, 419 ; *Greenwood* agt. *Brodhead*, 8 *Barb. S.
C.*, 593 ; *Crippen* agt. *Hudson*, 13 *N. Y. R.*, 161 ; *Sage* agt.
*Chollar*, 21 *Barb. R.*, 596 ; *Ketchum* agt. *Durkee*, 1 *Barb.
Ch. R.*, 480 ; *Kirby* agt. *Schoonmaker*, 3 *Barb. Ch. R.*, 46.)

In the present case Hunt transferred to Julia M. Chap-
man.all his interest in the partnership assets.   There is
no allegation that this transfer was fraudulent.   No credi-
tor had any lien to prevent it.   Hunt has made no stipu-
lation for the benefit of the creditors of the firm, requiring
Julia to pay the partnership debts, and she came under
no obligation to her partner Hunt to apply those assets
to any particular purpose, or to indemnify him against
the partnership liabilities.   The creditors have no equi-
ties here to be worked out through the retiring partner.
That partner reserved none for them or for himself.   His
disposition of the assets was absolute and complete, and
Julia became vested with the entire and separate owner-
ship thereof.

This property so transferred cannot be reached by
execution on a judgment recovered against the firm com-
posed of Hunt and Julia M. Chapman, where she has not

been personally served with process. The property belongs to her individually, and the execution to be issued on such judgment must direct the sheriff not to levy on her separate property.

It is quite clear that in such a case the remedy at law has not been exhausted as against Julia, and that creditors having judgments recovered by the service of process on Hunt only, with executions thereon, cannot maintain an action to inquire into or set aside any transfer made by her of such partnership property or assets as were conveyed to her by her former partner, Hunt, in the manner above mentioned.

The order appealed from should be affirmed.

INGRAHAM, P. J. There can be no doubt that the judgment in this case would not be sufficient to warrant an execution against the defendant Chapman, who was not served, so as to reach her individual property.

Nor would it form the foundation of an action against her if she had been sued upon it; that would only furnish the amount of recovery after her liability was established by other evidence. (*Mervin* agt. *Kumbell*, 23 *Wend.*, 293; *Oakley* agt. *Aspinwall*, 4 *Comst.*, 513.)

Nor would it be a cause of action upon which an attachment against the debtor not served could be issued. (*Id.*)

In the *Commercial Bank, &c.* agt. *Meach*, (7 *Paige*, 468,) the CHANCELLOR held that, upon a joint judgment against several defendants, some of whom were not served with process, all must be made defendants in a creditor's bill, to enable those whose property was taken to satisfy the debt to claim contribution against their co-defendants; and in *Howard* agt. *Sheldon*, (11 *Paige*, 558,) he held that in an action on a judgment against joint debtors, where process was not served on one defendant, but an execution issued against the joint property of all and the separate property of the one served, the creditor had not by

Field agt. Hunt.

such execution exhausted his remedy at law so as to enti-
tle him to a creditor's bill against the defendant who was
served with process in the last suit.

In that case it was also held that the complainant had
not exhausted his remedy at law for the recovery of his
debt until execution had been issued against each of the
defendants as to their individual property as well as the
joint property of the firm.

This rule, applied to the present case, shows that the
order appealed from was correct. (*See, also, Childs* agt.
*Brace et al.*, 4 *Paige*, 309.)

There is no force in the objection that the execution
was returned before sixty days had expired. All the
judges in this district have held that it was not neces-
sary. The CHANCELLOR also so held in *Platt* agt. *Cadwell*,
(9 *Paige*, 386.)

NOTE.—As there is considerable diversity of opinion in reference to this question,
perhaps it may not be considered out of place, or improper, to briefly review some
of the decisions of the late court of chancery on this point. In this *same case* at
special term, (22 *How. Pr. R.*, 329,) W. F. ALLEN, J., said: "Had the objection
been urged that sixty days had not elapsed between the issuing of the executions
upon the judgments at law and the commencement of these actions, I should have
felt constrained to hold the objection well taken, following the decision at general
term in the fifth district, and the construction given by the CHANCELLOR to the
statute regulating this equitable remedy." (*Cassidy* agt. *Meacham*, 3 *Paige*, 311;
*Strange* agt. *Longley*, 3 *Barb. Ch.*, 650.)

In the case of *Platt* agt. *Cadwell*, (9 *Paige*, 386,) the CHANCELLOR said: "This
court does not inquire into the regularity of the proceedings of courts of co-ordinate
jurisdiction. And the return of the executions in this case, even if they were liable
to be set aside for irregularity by the court out of which they issued, were not void.
The complainant, therefore, *after the return day was past, had a right to consider
his remedy at law exhausted*, and to file his bill here to reach the effects of the
defendant, which could not be levied on by the sheriff. And if the filing of the
executions, with the return indorsed thereon, before the expiration of sixty days,
was irregular, the defendant must apply to the court of law to set aside the returns.
(*Williams* agt. *Hogeboom*, 8 *Paige*, 469.) All that this court can do in such a
case is to compel the complainant *to wait until after the return day of the execu-
tion is past* before he files his bill here. (*Cassidy* agt. *Meacham*, 3 *Paige*, 311.)
And it will, when necessary, stay the proceedings here a sufficient length of time to
give the defendant an opportunity to apply to the court of law for relief, where
there is a probability that such relief will be granted.

To the same effect is the case of *Williams* agt. *Hogeboom*, *supra*, where the
execution was made returnable on a day certain, which was only five days after its

Gardner agt. Barney.

## SUPREME COURT.

DANIEL GARDNER agt. HIRAM BARNEY and CHARLES BUTLER.

Where an appeal is taken from the judgment of the special term to the general term, and the proper *undertaking* executed by the appellant and his sureties, under and in pursuance of § 335 of the Code, the *obligation of the sureties* is not fulfilled, and the undertaking satisfied by a reversal of the judgment at the general term, *where the judgment of the general term has also been reversed in the court of appeals.*

That is, the *sureties* are not limited in their liability to the judgment of the *general term*. The *affirmance* mentioned in their undertaking, is an affirmance by the legally constituted tribunal having cognizance *finally* of the subject of the litigation. The *reversal* by the court of appeals, when effect is given to it in the court below, is in fact an *affirmance by the general term* of the judgment at the special term.

Nor are the liabilities of the sureties at all affected or changed by the fact that when they executed the undertaking there was no law in existence that authorized an appeal to the court of appeals from an order of the general term *granting a new trial;* but before the decision of the general term a law was passed which authorized such an appeal, and under which the appeal in this case was taken.

When an appeal is from a judgment against two defendants, the sureties upon a joint undertaking are liable if the judgment is *affirmed against one.* (*To the same effect is Seacord* agt. *Morgan,* 17 *How. Pr. R.,* 394.)

teste; the CHANCELLOR says: "I am satisfied that a neglect to make an execution returnable at the end of sixty days, from the receipt thereof by the sheriff, renders it irregular merely; and that the execution is not void, so as to make the attorney issuing it, and the party in whose favor it is issued, trespassers, without the necessity of an application to the court to set aside the execution for the irregularity."

In *Cassidy* agt. *Meacham, supra,* the CHANCELLOR said: "Perhaps a return made by the sheriff on an execution before the return day, may be valid by relation, after the expiration of the time the execution has to run. *Until the return day, however,* it would be the duty of the sheriff to seize and sell any property of the defendants which could be found within his bailiwick. *The execution cannot, therefore, be considered as legally returned unsatisfied until after the return day.* The creditor must, in his bill, set out the issuing of the execution, the time at which it was returnable, and the actual return of the sheriff thereon, in such a manner that the court can see that the remedy at law has been *legally exhausted.* The intention of the legislature was to adopt the principle settled by the court for the correction of errors in *Hadden* agt. *Spader,* (20 *John. R.,* 554,) and not to establish an arbitrary rule, by which the defendant might be harassed by a suit in chancery when he had sufficient property which could be reached at law *during the life of the execution.* In the case under consideration the court cannot legally know, or presume, *previous to the return day of the execution,* that the judgment will not be satisfied. Although the sheriff cannot now find property, the defendants may, before that time, satisfy the execution out of the equitable funds in their hands, which cannot be levied on by him."—REP.